**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MCC NON FERROUS TRADING INC.,

                 Plaintiff,

vs.                                                        14 Civ. 8302 (JCF)

AGCS MARINE INSURANCE COMPANY,

                 Defendant.

**DECLARATION OF JOHN A.V. NICOLETTI**
**IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, JOHN A.V. NICOLETTI, declares under penalty of perjury as follows:

1.      I am a member of Nicoletti Hornig & Sweeney, attorneys of record for AGCS Marine Insurance Company in the above-captioned action. I have been the partner responsible for this matter from the beginning and, as such, I am fully familiar with all prior proceedings herein.

2.      I make this declaration in opposition to the motion of MCC Non Ferrous Trading Inc. seeking summary judgment on AGCS' Fourth and Seventh Defenses/Affirmative Defenses and in support of AGCS' request for relief under Rule 56(d) of the Federal Rules of Civil Procedure.

3.      MCC makes numerous factual assertions in its memorandum of law (Doc. 24) and in its Local Civil Rule 56.1 Statement (Doc. 22) concerning events and circumstances in which AGCS was not involved. These factual assertions concern, among other things, contracts

between MCC and third-parties, contracts between third-parties, the loading operations in Manila and the transportation of the reportedly loaded containers to the port in Manila.

4.      MCC cites to, among other things, the Affidavit of Brian Kim to support its factual assertions.  AGCS has not had an opportunity to examine Mr. Kim on the statements in his affidavit.

5.      MCC also cites to, among other things, reports prepared by Reck & Co. GmbH to support its factual assertions.  The references and quotes in the Reck reports cited by MCC are a recitation/restatement of information provided to Reck by third-parties.  Those third-parties have not been deposed or offered sworn testimony.

6.      No discovery has been conducted in this action.  As such, AGCS is not presently in a position to fully respond to the factual assertions made in MCC's memorandum of law or in its Local Civil Rule 56.1 Statement.

7.      AGCS submits that it cannot adequately oppose MCC's motion until discovery of MCC, McQan Corporation, Riverbend Enterprises (to the extent possible) and others has been had as to the contracts between MCC and third-parties, the contracts between the third-parties, the loading operations in Manila, the transportation of the reportedly loaded containers to the port in Manila and the other issues raised in MCC's motion.

8.      AGCS also submits that it cannot adequately oppose MCC's motion until discovery of MCC, McQan, Riverbend (to the extent possible) and others has been had as to the following allegations in AGCS' Defenses and Affirmative Defenses, all of which go to AGCS' arguments that Riverbend was a party of interest to the underlying purchase transaction between McQan and MCC or, alternatively, that Riverbend was McQan's agent:

> MCC, as buyer, and McQan, as seller, were allegedly parties to Purchase Agreement No. M1313-P dated October 16, 2013 for the purchase of a trial lot of

approximately 300MT of copper scrap to be followed by 300MT – 500MT per month upon successful completion of the trial load. The Purchase Agreement called for the copper scrap to be shipped CIF to Hamburg or Bremerhaven or an equivalent port.

McQan allegedly turned to Riverbend to supply the copper scrap to be sold to MCC under the Purchase Agreement.

McQan, as buyer, and Riverbend, as seller, were allegedly parties to Sales Contract No. MQO723 dated September 30, 2013 for the sale of a trial lot of approximately 300MT of copper scrap to be followed by 300MT – 500MT per month upon completion of the trial load. The Sales Contract called for the copper scrap to be shipped CIF from the Philippines to Hamburg or any main port in Europe.

MCC allegedly instructed McQan on October 22, 2013 that the bill of lading issued in connection with the alleged shipment of copper scrap should identify the "supplier" (i.e., Riverbend) as the shipper, identify the consignee as "TO ORDER" and describe the goods as "copper wire scrap."

Gateway Container Line Phils. Inc., a non-vessel owning common carrier (NVOCC), was allegedly engaged to transport the alleged shipment of copper scrap from the Philippines to Europe.

Gateway allegedly prepared and issued a bill of lading at Manila, Philippines dated November 4, 2013 based on the instructions provided by MCC through McQan.

The bill of lading allegedly issued by Gateway identifies "RIVERBEND ENTERPRISES" as the shipper.[1]

The bill of lading allegedly issued by Gateway lists fifteen containers said to contain goods described as "COPPER WIRE SCRAP AS PER CONTRACT NO. MQO723 DATED SEPT. 30, 2013" with a net weight of 307.50MT.[2]

MCC allegedly instructed McQan on November 9, 2013 to have the bill of lading endorsed by Riverbend to "VMF Special Purpose Fund SPC on behalf of M1 Segregated Portfolio c/o Vermillion Asset Management."

---

[1] This allegation belies MCC's contention that Riverbend is totally divorced from the purchase agreement between McQan and MCC. *See* MCC Memo at 11.

[2] "CONTRACT NO. MQO723 DATED SEPT. 30, 2013" is the sales contract between Riverbend and McQan. This again contradicts MCC's assertion that Riverbend had no connection to the purchase agreement between McQan and MCC. *See* MCC Memo at 11.

Riverbend allegedly endorsed the Gateway bill of lading according to the instructions provided by MCC through McQan.

Riverbend allegedly supplied the fifteen containers for the alleged shipment of copper scrap.

Riverbend was allegedly responsible for the loading of the fifteen containers at its warehouse and for delivering the loaded containers to the terminal at the load port.

The Purchase Agreement between MCC and McQan and the Sales Contract between McQan and Riverbend were on back-to-back terms and were part of a single transaction by which Riverbend was allegedly to supply the copper scrap that was allegedly to be sold to MCC by McQan.

AGCS' Answer (Doc. 10) ¶¶ 125-29, 131-32, 134-36, 140, 142 & 170.

9.      Finally, should the Court find Clause 58 of the subject policy of insurance to be ambiguous, AGCS submits that it cannot adequately oppose MCC's motion until discovery of MCC and others has been had on the meaning intended by the parties during the formation of the policy.

10.     Therefore, pursuant to Rule 56(d), AGCS respectfully requests that the Court deny MCC's motion or at least defer considering the motion to allow time to take discovery on the foregoing.

11.     To be clear, the foregoing does not necessarily represent all of the entities from whom AGCS may need discovery or all of the areas that AGCS may need discovery on.  Instead, the foregoing goes to the facts that are unavailable to AGCS essential to justify its opposition to MCC's motion.

12.     Attached hereto as Exhibit "A" is a true and correct copy of a four page e-mail string beginning with an e-mail dated October 22, 2013 from Brian Kim to Jun Yong Lee and Glendon Archer that was provided by MCC in the course of its claim to AGCS.  AGCS submits

that this exhibit will be admissible at trial either under Rule 801(d)(2) or Rule 803(6) of the Federal Rules of Evidence.

13.    Attached hereto as Exhibit "B" is a true and correct copy of an e-mail dated November 9, 2013 from Brian Kim to Jun Yong Lee that was provided by MCC in the course of its claim to AGCS.  AGCS submits that this exhibit will be admissible at trial either under Rule 801(d)(2) or Rule 803(6) of the Federal Rules of Evidence.

14.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 11, 2015

           /s/ John A.V. Nicoletti
           JOHN A.V. NICOLETTI

# EXHIBIT

## "A"

## Brian Kim

| | |
|---|---|
| **From:** | Brian Kim <brian@metallicacc.com> |
| **Sent:** | Tuesday, October 22, 2013 10:45 AM |
| **To:** | 'Jun Yong Lee'; glendon@metallicacc.com |
| **Cc:** | 'Howard Sio' |
| **Subject:** | RE: Shipping Instruction of Cu Scrap ex Manila |

Dear JY,

As per conversation just now, please find below revised shipping instructions.
Shipper:
"ENTER SUPPLIER HERE"

Consignee:
"TO ORDER"

Notify Party:
"Aurubis AG Recycling
Marco Persighe
Kupferstr. 23
D - 44532 Lünen"

Commodity description:
Copper wire scrap

The draft BL can be issued as per the above, but we must be sure the shipper signs/stamps the back of each sheet of the Original BL.

Thanks,
Brian

---

**From:** Brian Kim [mailto:brian@metallicacc.com]
**Sent:** Monday, October 21, 2013 11:53 AM
**To:** 'Jun Yong Lee'; 'glendon@metallicacc.com'
**Cc:** 'Howard Sio'
**Subject:** RE: Shipping Instruction of Cu Scrap ex Manila

Dear JY,

Please find below the shipping instructions...
Shipper:
VMF Special Purpose Vehicle SPC on behalf of the M1 Segregated Portfolio
C/O VERMILLION ASSET MANAGEMENT
520 MADISON AVENUE, 38TH FLOOR
NEW YORK, NY 10022

Consignee:
Aurubis AG Recycling
Marco Persighe

1

Kupferstr. 23
D - 44532 Lünen

Notify Party:
Aurubis AG Recycling
Marco Persighe
Kupferstr. 23
D - 44532 Lünen


Commodity description:
Copper wire scrap


Will be awaiting copy of the draft BL. We will revert shortly in a separate email regarding our discussion for the supervision job.


Thanks,
Brian

---

**From:** Jun Yong Lee [mailto:jylee@mcqan.com]
**Sent:** Friday, October 18, 2013 11:19 AM
**To:** glendon@metallicacc.com
**Cc:** 'Howard Sio'; 'Brian Kim'
**Subject:** Shipping Instruction of Cu Scrap ex Manila


Dear Brian


Pursuant to our conversation through the phone today,

Please be advised that SHIPPING INSTRUCTION & BL INSTRUCTION DRAFT.

Always Thanks.

J.Y.

---

**From:** glendon@metallicacc.com [mailto:glendon@metallicacc.com]
**Sent:** Friday, October 18, 2013 8:58 PM
**To:** J.Y. Lee
**Cc:** Howard Sio; 'Brian Kim'
**Subject:** Re: Loading , Weighing and Sealing of Cu Scrap ex Manila

Thank You JY! I too look forward to the development of this direct business with You and McQuan Corp.


Regards


Glendon!
Sent via BlackBerry by AT&T

---

From: "Jun Yong Lee" <jylee@mcqan.com>
Date: Fri, 18 Oct 2013 20:23:37 +0900

To: <glendon@metallicacc.com>
Cc: 'Howard Sio'<howie@metallicacc.com>; 'Brian Kim'<brian@metallicacc.com>
Subject: Loading , Weighing and Sealing of Cu Scrap ex Manila

Dear Glendon

Your 10% PB has been received good in order in my bank today and it has been transferred to the supplier today also.

I'm pleasure & very welcome to work with your representative at loading and sealing in Manila.

Please check my response in Green as below.

Thanks a lot.

J.Y.


Further to Glendon's mail below, we have the following questions regarding the weighing.

1)      Where in Manila is the warehouse located (address please) and how close is it to the port of Manila?

(My schedule for Manila : Arriving in Manila on 21st , Leaving to Manila on 24th)

(1) Office Address : Unit 9, FUTURE POINT Plaza, 112 PANAY AVENUE, SOUTH TRIANGLE, QUEZON CITY, PHILIPPINES (To warehouse ~30.minutes by car)

(2) Warehouse Address : 1968 BONIFACIO AVENUE, CAINTA, RIZAL, PHILIPPINES (To Manila port ~30km distance from port)

(3) I'm going to be supplier's office first in the morning on 22nd (Tue), Either office or warehouse is fine with me upon your Rep.'s convenience.

On 21st Oct.(Mon), communicated with your Rep. thru phone call to make a place and time of 22nd Morning.

2)      Will the material be stuffed at the warehouse or at the port?

At the warehouse : Today, the supplier trying to container company for making confirm of date and stuffing time (Will be inform us with precise time)

3)      If at the warehouse, will this be the basis for the weight that the seller will use as provisional weight for the invoice?

YES, however the McQAN-Supplier Agreement shows that "THE FINAL WEIGHTS AND ANALYSIS AT THE DESTINATION"

The supplier is also willing to having to be representative for weight and assays determined at destination port


We need to confirm the above so that we can inform our local rep in Manila to supervise the loading, weighing, and sealing of the containers.

Please also confirm that the stuffing, loading, and sealing will be done Tuesday and completed Wednesday.

Our local rep will likely be McPhar Geoservices - we will confirm this tomorrow and we will arrange to have him meet you at the warehouse or at the port depending on where the material will be stuffed, loaded, weighed and sealed.

Thank you,
Brian


Jun Yong Lee CEO/President Ph.,D.
McQAN Corporation
JY Global

**New Address & Telephone number**
**#606, Bundang Amigo Tower 358-2, Yatap-dong, Bundang-gu, Seongnam-si, Gyeonggi-do 463-828, Korea**

Mobile : +82-(0)10-5211-1638
**Office : +82-(0)31-622-0442**
**Fax. : +82-(0)31-622-0441**



4

# EXHIBIT

# "B"

## Brian Kim

| | |
|---|---|
| **From:** | Brian Kim <brian@metallicacc.com> |
| **Sent:** | Saturday, November 9, 2013 2:56 PM |
| **To:** | 'Jun Yong Lee' |
| **Cc:** | Glendon; Howie Sio |
| **Subject:** | RE: Change of discharge port from Hamburg to Rotterdam |

Dear JY,

As per conversation yesterday, please note the second BL that is to be reissued in Manila (with Rotterdam as discharge port) must be endorsed on the back of each page (3 sets of originals) of the Original BL as following. You can write the below in with pen on the top portion on the back of the BL (should be a total of 6 sheets as there are 2 sheets per Original BL).
**ENDORSED TO VMF SPECIAL PURPOSE VEHICLE SPC**
**ON BEHALF OF THE M1 SEGREGATED PORTFOLIO**
**C/O VERMILLION ASSET MANAGEMENT**
**520 MADISON AVE., 38th FL, NEW YORK, NY 10022**

The shipper, Riverbend Enterprises, must sign right below the written endorsement above so that the title has been transferred to our bank. Once you send us a scanned copy of the front and back page of each endorsed original BL, our bank will then release the funds so that we can issue provisional payment to McQan. Please be sure that the Original BL's are in the hands of McQan so that you can send them directly to MCC in NY once you have received the payment.

Thank you,
Brian

**From:** Brian Kim [mailto:brian@metallicacc.com]
**Sent:** Friday, November 8, 2013 12:30 PM
**To:** jylee@mcqan.com
**Subject:** FW: Change of discharge port from Hamburg to Rotterdam

**From:** Brian Kim [mailto:brian@metallicacc.com]
**Sent:** Thursday, November 7, 2013 12:21 PM
**To:** 'Jun Yong Lee'
**Cc:** 'Howie Sio'; 'glendon'; 'SK LEE-Mcqan'
**Subject:** RE: Change of discharge port from Hamburg to Rotterdam

Dear JY,

Please see the attached file which details the transshipment from Manila to Singapore to Hamburg. The containers are scheduled to arrive in Singapore on 11/9 and reload onto another vessel APL VANDA on 11/17. Please instruct the supplier that the changing of discharge port to Rotterdam can be done at the transshipment in Singapore without a problem.

We assume that there shouldn't be that much of an extra charge because Rotterdam is nearby Hamburg and we are not asking for the containers to be moved from Hamburg back to Rotterdam. Please let us know what the vessel line is asking for as an extra charge.