UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MCC NON FERROUS TRADING INC.,

        Plaintiff,

vs.                                             14 Civ. 8302 (JCF)

AGCS MARINE INSURANCE COMPANY,

        Defendant.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE INTERPRETATION OF CLAUSES 52 AND 53

                                                              NICOLETTI HORNIG & SWEENEY
                                                              *Attorneys for Defendant*
                                                              Wall Street Plaza
                                                               88 Pine Street, Seventh Floor
                                                               New York, New York 10005-1801
                                                                (212) 220-3830

Of Counsel

John A.V. Nicoletti
Nooshin Namazi
Kevin J.B. O'Malley

# TABLE OF CONTENTS

Table Of Authorities ............................................................................................................. ii

Preliminary Statement ........................................................................................................... 1

A.     AGCS Does Not Seek Summary Judgment On Coverage ....................................... 1

B.     The Policy Insures Against Physical Loss ............................................................... 2

C.     The Copper Scrap Did Not Exist For Purposes Of The Policy ................................ 3

D.     The Kim Affidavit Does Not Satisfy MCC's Prima
Facie Burden Of Showing The Copper Scrap Existed ............................................. 3

E.     AGCS Does Not Seek To Disavow The Reck Reports ........................................... 5

F.     Clause 53 Is Not Triggered ...................................................................................... 6

Conclusion ............................................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002) ................................................................................................ 1

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................................... 7

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,
    472 F.3d 33 (2d Cir. 2006) ................................................................................................ 1

**PRELIMINARY STATEMENT**

AGCS Marine Insurance Company submits this reply memorandum of law in further support of its cross-motion for partial summary judgment on the interpretation of Clauses 52 and 53 of Ocean Marine Cargo Policy No. OC 91257500 (the "Policy"). This reply is limited to certain issues raised in MCC Non Ferrous Trading Inc.'s memorandum of law in opposition to AGCS' cross-motion (Doc. 36, "Opp"). The lack of a response to a particular factual assertion or argument does not indicate a concession by AGCS, which has already addressed most of those assertions and arguments in its opposition to MCC's own motion for summary judgment.

A. **AGCS Does Not Seek Summary Judgment On Coverage**

MCC misconstrues the basis of AGCS' cross-motion. AGCS seeks to establish the standard that MCC must meet to trigger coverage under Clauses 52 and 53. AGCS does not, presently, seek a judgment that MCC has failed to meet that standard. AGCS' opposition to MCC's own motion makes clear that there are fact and evidentiary disputes, as well as a need for discovery, that preclude entry of summary judgment on coverage. The initial interpretation of a contract, however, is a matter of law for the Court to decide. *See*, *e.g.*, *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006); *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

AGCS seeks a judgment interpreting the Policy and declaring that MCC must demonstrate, in addition to the specific triggers stated in the clauses themselves, the existence of "goods insured," that MCC had an insurable interest in "goods insured" and that there was a physical loss of "goods insured" in order to trigger coverage under Clauses 52 and 53.[1] MCC

---

[1] AGCS' argument that MCC "cannot make an initial showing that the copper scrap was at one time in existence" is made in opposition to MCC's motion, not in support of AGCS' cross-motion.

does not dispute that this is the standard it must meet. It does not contest that, if the copper scrap did not exist, it cannot show either an insurable interest in "goods insured" or that there was a physical loss of "goods insured." It remains to be seen, after discovery, whether MCC can make such a showing.

Almost all of the factual assertions and arguments submitted by MCC in opposition to AGCS' cross-motion do not go to the interpretation of Clause 52 or Clause 53 but, instead, go to MCC's argument that coverage for the claimed loss has been triggered under those clauses. These factual assertions and arguments, including the Affidavit of Anthony M. Kim, should have been submitted in connection with MCC's motion. By submitting them now, MCC has essentially allowed itself an unauthorized sur-reply that should not be considered.

### B. The Policy Insures Against Physical Loss

MCC asserts that AGCS "promised to insure this cargo from all risks of loss, including the peril of theft by fraud, trickery, deceit, or false pretenses, as well as mysterious disappearance of cargo." Opp at 19. MCC misstates the coverage provided by the Policy, which is not as broad as MCC describes.

Clause 36 provides that the Policy insures "against all risks of physical loss or damage from any external cause, except as noted in this policy (and excepting such risks as are excluded by the Paramount Warranties in this Policy)." Clause 58, which is a Paramount Warranty, then excludes losses caused by or resulting from certain misappropriation, secretion, conversion, infidelity or dishonest acts. The application of this exclusion is discussed in AGCS' opposition to MCC's motion.

C.  The Copper Scrap Did Not Exist For Purposes Of The Policy

MCC misunderstands the basis of AGCS' defense to coverage. It asserts that "[t]here is no dispute [MCC] has suffered a loss." Opp at 17. That is entirely untrue. AGCS disputes that MCC suffered a physical loss. If MCC suffered a loss at all, it was a financial one.

MCC twists AGCS' position into one in which AGCS purportedly denies the physical existence of the copper scrap in its entirety. Certainly, it has been AGCS' consistent position that the vast majority of the copper scrap never physically existed.[2] Based on Reck & Co. GmbH's reports, AGCS allows that a small, indeterminate quantity of copper scrap may have physically existed and been used on a "round-trip" basis to simulate a larger quantity. It is AGCS' position, however, that the "bait" copper scrap never existed for purposes of the insurance provided under the Policy because Riverbend Enterprises, the alleged supplier of the copper scrap, never intended to deliver the cargo. For all intents and purposes, then, the copper did not exist.[3]

D.  The Kim Affidavit Does Not Satisfy MCC's Prima Facie Burden Of Showing The Copper Scrap Existed

MCC submits the Affidavit of Anthony M. Kim (Doc. 38, "Kim Aff") as evidence of the existence of the copper scrap, the quantity of the copper scrap and the delivery of the cargo to the terminal.[4] The affidavit does not, however, indisputably establish these facts.

---

[2] MCC erroneously asserts that, "[p]rior to this Action, [ ] Allianz' claims department initially refrained from contesting the existence of the copper . . . ." Opp at 1. That is not true. In letters in May and June 2014, several months before this action was filed, AGCS advised MCC that the 307.5 MT cargo of copper scrap did not actually exist. Exhibits "A" & "B" to Declaration of Kevin J.B. O'Malley in Support of Defendant's Cross-Motion for Partial Summary Judgment executed on May 6, 2015.

[3] While there may be no dispute over whether the copper scrap was ever received in Rotterdam, that is not the same as there being no dispute as to whether the cargo ever existed.

[4] This affidavit goes to the assertions made in MCC's motion and should have been submitted in connection therewith, rather than now in what amounts to an unauthorized sur-reply.

Mr. Kim's purported verification of the copper scrap does not establish either the existence or the quantity of the copper scrap that MCC alleges was stolen. The alleged verification occurred in late August 2013, but the loading of MCC's purported cargo did not start until late October 2013. Kim Aff ¶¶ 7-15, 18-25 & 29. Mr. Kim allegedly saw a total of 300 MT of copper scrap at two warehouses, but neither of those warehouses was the loading warehouse. *Id.* ¶¶ 9-10, 12-14, 20-21 & 24. Copper scrap is a fungible good. No evidence has been offered to allow the conclusion that the copper scrap that Mr. Kim allegedly saw in August 2013 is the same copper scrap that was allegedly stolen in late October 2013.

Mr. Kim's purported witnessing of the loading likewise does not establish the existence or the quantity of the copper scrap or that fifteen containers loaded with copper scrap were delivered to the terminal. Mr. Kim did not see all fifteen of the containers being loaded with copper scrap. Instead, he only saw eleven of the containers being loaded. *Id.* ¶¶ 19 & 26. Similarly, Mr. Kim did not see all fifteen containers delivered to the terminal. He reportedly only followed some of the containers to the terminal. *Id.* ¶ 26. Furthermore, Mr. Kim's statement that he saw the containers pass through the terminal's gate is in dispute with Reck's opinion that the loaded containers were initially taken to the wrong gate – one from which entry into the terminal is not possible. Exhibit "B" to Declaration of Jochen Stühmer in Opposition to Plaintiff's Motion for Summary Judgment executed on March 10, 2015 (Doc. 29, "Stühmer Decl") at 28.

Mr. Kim's affidavit relies on hearsay. As he did not witness the first four containers being loaded, his statements concerning those containers are based on what he was told by someone else, Vikash Thacker. Kim Aff ¶ 19. Similarly, as he did not follow all of the

4

containers to the terminal, his statements concerning the delivery to the terminal are based on what he was told by someone else, Sung Gun Lee. *Id.* ¶¶ 26-28.

Therefore, contrary to its assertion, MCC has not submitted "admissible evidence" from an "eye-witness to the loading of the copper" that "at least 300 MT of copper scrap existed, was loaded into containers at Riverbend's warehouse, and transported to the port terminal." Opp at 14. Furthermore, Mr. Kim's affidavit does not contradict Reck's conclusion that a much smaller quantity of copper scrap than MCC claims was stolen may have been used on a "round-trip" basis to simulate a larger quantity. Exhibit "B" to Stühmer Decl at 30.

In any event, AGCS has not had the opportunity to depose Mr. Kim or to conduct discovery on the factual assertions made in his affidavit. Declaration of John A.V. Nicoletti in Opposition to Plaintiff's Motion for Summary Judgment executed on March 11, 2015 (Doc. 28) ¶¶ 3-9.

### E. AGCS Does Not Seek To Disavow The Reck Reports

AGCS does not seek "to cast wholesale doubt about the reliability of its own investigators' reports and deem them inadmissible . . . ." Opp at 3. Nor does AGCS assert that "it may disregard the photographs proving the copper's existence simply because [Jochen] Stühmer did not personally attend the loading or transportation of the containers." *Id.* Instead, AGCS seeks to hold MCC to its burden of establishing the admissibility of the information contained in and the documents/photographs attached to the Reck reports that MCC so heavily relies upon. That burden includes authenticating the proffered evidence and either demonstrating that the evidence is not hearsay or, if it is, that an exception to the hearsay rule exists.

MCC argues for the first time in its reply on its own motion that AGCS "adopted" the Reck reports and, therefore, the reports are admissions against AGCS' interest. Plaintiff's Reply

5

Memorandum of Law (Doc. 35, "MCC Reply") at 3-4. Putting aside that this a new argument raised only on reply, AGCS has not adopted Reck's recitation of the information provided to it by third-parties.[5] MCC cites to that recitation as evidence of the existence and the quantity of the copper scrap. AGCS has, however, consistently denied the existence and the quantity of the cargo as alleged by MCC. Moreover, to the extent it has adopted the Reck reports at all, AGCS has adopted Reck's conclusion that the amount of 307.03 MT of copper scrap never existed in total. That conclusion contradicts the third-party narrative in the Reck reports that MCC relies upon and asserts AGCS has adopted.

### F. Clause 53 Is Not Triggered

Among other things, Clause 53 requires that the goods insured by AGCS' Policy be "covered by other insurance" that does not fully cover the loss. MCC argues that Clause 53 is triggered here because the copper scrap was allegedly covered by other insurance provided by Charter Ping An Insurance Corp., which has refused to pay MCC's claim. Opp at 9 & 21. It is AGCS' position that there was no "other insurance" because Charter Ping denies having provided any insurance. MCC counters:

> Charter Ping An did not disavow that it sold insurance for the copper scrap cargo .
> . . .
>
> * * *
>
> Tellingly . . . never did Charter Ping An allege that it did not sell insurance to Riverbend for the copper cargo.

---

[5] In its moving papers, MCC cites to the subsection of Rule 801(d)(2) of the Federal Rules of Evidence that pertains to statements by a party's agent. Plaintiff's Memorandum of Law in Support (Doc. 24) at 4 n. 2. In its reply papers, MCC cites to case law that relies on the subsection of Rule 801(d)(2) that pertains to statements adopted by the party-opponent. MCC Reply at 3-4.

6

Specifically, Charter Ping An never said – as one would expect if it never insured cargo sold by Riverbend – that it did not insure Riverbend at all in this transaction.

*Id.* at 21.

On the contrary, however, attorneys for Charter Ping advised McQan Corporation that Charter Ping "has not issued [an] insurance policy . . . in favor of Riverbend" and that "the insurance policy which you have submitted to our client and from which you based your claim [ ] is a counterfeit and is, therefore, a complete nullity." Exhibit "A" to Declaration of Joshua Gold in Support of Plaintiff's Motion for Summary Judgment on Allianz Defenses Regarding Theft with Fraudulent Intent and the "Infidelity" Exclusion (Doc. 25-20) at 378.[6]

## CONCLUSION

AGCS' cross-motion for partial summary judgment on Clauses 52 and 53 should be granted.

Dated: New York, New York
       May 6, 2015

                        Respectfully submitted,

                        NICOLETTI HORNIG & SWEENEY
                        *Attorneys for Defendant*

                        By:   /s/ John A.V. Nicoletti
                               John A.V. Nicoletti
                               Nooshin Namazi
                               Kevin J.B. O'Malley
                               Wall Street Plaza
                               88 Pine Street, Seventh Floor
                               New York, New York 10005
                               (212) 220-3830
                               jnicoletti@nicolettihornig.com

---

[6] While this letter has not yet been presented in admissible form, all inferences drawn from the underlying facts must be considered in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).