UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MCC NON FERROUS TRADING INC.,

Plaintiff,

vs.

AGCS MARINE INSURANCE COMPANY,

Defendant.

14 Civ. 8302 (JCF)

**DECLARATION OF KEVIN J.B. O'MALLEY IN
SUPPORT OF DEFENDANT'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, KEVIN J.B. O'MALLEY, declares under penalty of perjury as follows:

1. I am a member of Nicoletti Hornig & Sweeney, attorneys of record for AGCS Marine Insurance Company in the above-captioned action. I have been involved in this matter from the beginning and, as such, I am fully familiar with all prior proceedings herein.

2. I make this declaration in support of AGCS' cross-motion for partial summary judgment on the interpretation of Clauses 52 and 53.

3. Attached hereto as Exhibit "A" is a true and correct copy of a May 30, 2014 letter from Thomas M. Curran of AGCS to Paul J. Fitzpatrick of Nausch, Hogan & Murray, Inc. AGCS submits that this exhibit will be admissible at trial under Rule 803(6) of the Federal Rules of Evidence.

4. Attached hereto as Exhibit "B" is a true and correct copy of a June 13, 2014 letter from Thomas M. Curran of AGCS to Paul J. Fitzpatrick of Nausch, Hogan & Murray, Inc.

AGCS submits that this exhibit will be admissible at trial under Rule 803(6) of the Federal Rules of Evidence.

     5.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2015

_Kevin J. B. O'Malley_
KEVIN J.B. O'MALLEY

# EXHIBIT

# "A"

# Allianz ⓘ

**Allianz Global Corporate & Specialty**

May 30, 2014

Paul J. Fitzpatrick, Esq.
Executive Vice President
Nausch, Hogan & Murray, Inc.
180 Maiden Lane
New York, New York 10038

                Re:    **M/V Resourceful, Voy. 402W**
                          **M/V APL Raffles, Voy. 003W46**
                          **15 X 20' Containers said to contain**
                          **307.03 tons Copper Wire Scrap.**
                          **D.O.L.: 11/4/13**
                          **NHM Ref. 13/1778**
                          **AGCS Claim No. 20084334**
                          **Policy No. OC-91257500**
                          **Insurer: AGCS Marine Insurance Company**

Dear Mr. Fitzpatrick:

      Thank you for your email of May 22, 2014. Your able advocacy notwithstanding, we do not believe that the information and further insight you have provided will change our conclusion that the reported loss is not covered under Marine Open Cargo Policy No. OC-91257500.

      Initially, we note that you are correct in pointing out that there would be Difference in Conditions, Increased Value Insurance, and Guaranty of Collectibility cover over the insurance provided by the underlying shipper/seller Riverbend. However, as you can appreciate, it would not affect our position on coverage.

      With respect to MCC's claim against McQan, we acknowledge that our investigator was given a copy of MCC's December 18, 2013 letter to McQan after meeting with MCC in April, but have yet to receive any information as to McQan's position as respects MCC's financial losses stemming from this transaction. Unless and until McQan refuses to acknowledge its liability, contingent coverage is not triggered. Also, with respect to your contentions of Riverbend not being the underlying[1] seller and supplier of the goods which

---

[1] "Underlying – adjective, 1. lying under; placed beneath 2. fundamental, basic; the underlying cause . . ." Websters' New World College Dictionary, 2010.

Allianz Global Corporate & Specialty
1 Chase Manhattan Plaza, 37th Floor
New York, NY 10005
Phone +1.646.472.1425
Fax +1.212.524.6805

were supposed to be the subject of the transit, we can only say that you are not taking into account the plain meaning of that term.

As for your numbered comments, we offer the following by way of response:

1. Our investigator was informed by both McQan and Anthony Kim that it was the latter who first introduced the parties to the underlying transaction after receiving contact from Riverbend's agent, Vikash Thacker.

2. No further response seems to be necessary at this time. It seems to be common ground that the sales were back to back.

3. What is the legally binding contract being referred to that the buyer has a right to receive from the supplier and seller?

4. No further response seems to be necessary at this time.

5. When did MCC first become aware of the involvement of Messrs. Thacker and/or Uy in the loading?

6. No further response seems to be necessary at this time.

7. No further response seems to be necessary at this time.

8. When did Mr. J.Y Lee first report that he saw 300 MT of Copper Scrap, and specifically where and when did he say that he saw it? Please provide any photographs as well as information as to the physical address and where this inspection is alleged to have taken place.

9. No further response seems to be necessary at this time.

10. No further response seems to be necessary at this time.

11. No further response seems to be necessary at this time.

Allianz Global Corporate & Specialty ®
1 Chase Manhattan Plaza
37th Floor
New York, NY 10005
Phone +1.646.472.1480
Fax +1.212.524.6805

Mr. Paul J. Fitzpatrick
Page -3-
May 30, 2014

12. Is any form of documentation or other information available to identify the truckmen who took the containers to the "port gate" as being anything other than Riverbend's accomplices? Were any interchange or other receipts provided? Are there any photographs which would show that the modifications had not been made to the containers before loading?

13. No further response seems to be necessary at this time.

14. No further response seems to be necessary at this time.

15. No further response seems to be necessary at this time.

16. Does the assured have any evidence which would show that the alleged 307.5 MT cargo of Copper Scrap actually was delivered to the ocean carrier? Additionally, what is the documentation supporting MCC's contention that the trucks that pulled the containers to the "port gate" were supplied by Gateway?

17. According to emails provided to our investigator by MCC, MCC reviewed, revised and approved a draft of the bill of lading before it was issued, and ultimately endorsed by Riverbend directly to MCC's financing partner VMG. We accept that MCC's instructions in this regard may have been relayed by McQan to Riverbend, and not communicated directly.

18. A copy of the M.O.L. freight bill is enclosed. Our investigator obtained it from McQan who we understand obtained it in the Philippines.

19. We too continue to receive no further response from Charter Ping An.

20. We have received no further information concerning Riverbend.

As we indicated at the beginning of this letter, we stand by the coverage analysis set forth in our letter of May 14, 2014. We respectfully disagree with your contention that Mr. J.Y. Lee's alleged sight of "300 MT of Copper Scrap" at an unknown location in the Philippines a considerable period of time prior to loading establishes that those goods actually entered transit. Moreover, the statements of Messrs. Seong Geun Lee and Anthony Kim to our investigator demonstrate that they had no direct knowledge whatsoever with respect to the first four containers and that with respect to the final eleven, they agreed that they had been duped by the shippers and their accomplices into believing that the copper was delivered to the ocean carrier.

Allianz Global Corporate & Specialty ®
1 Chase Manhattan Plaza
37th Floor
New York, NY 10005
Phone +1.646.472.1480
Fax +1.212.524.6805

It is clear from everything that we have seen that MCC was a victim of a fraudulent scheme perpetrated in the Philippines by Riverbend and its accomplices. Riverbend was the shipper and the underlying seller in the contemplated back to back CIF sales. As you know, it is not the intent of cargo underwriters to cover instances of shippers' fraud . . . even in the absence of specific exclusions. In this latter respect, the policy issued to Metallica verbalizes this intent by virtue of both Clause 49B (Shipper's Fraud or Misstatement) as well as Paramount Warranty 58 (any dishonest act done by or at the instigation of . . .[an]other party of interest to the underlying purchase or sale transaction). For one to say that Riverbend was neither the shipper nor the underlying seller in these back to back CIF transactions is contrary to the facts.

We remain ready to reimburse the assured for the demurrage charges once presented and continue to reserve all of our rights under the policy, at law or otherwise. Additionally, we would be pleased to discuss this further with you at your convenience if you should so desire.

Sincerely,

Thomas W. Curran
Claims Manager
Ocean Cargo

Allianz Global Corporate & Specialty ®
1 Chase Manhattan Plaza
37th Floor
New York, NY 10005
Phone +1.646.472.1480
Fax +1.212.524.6805

# EXHIBIT

# "B"

# Allianz ⓘ

Allianz Global Corporate & Specialty

June 13, 2014

Paul J. Fitzpatrick, Esq.
Executive Vice President
Nausch, Hogan & Murray, Inc.
180 Maiden Lane
New York, New York 10038

    Re:    **M/V Resourceful, Voy. 402W**
             **M/V APL Raffles, Voy. 003W46**
             **15 X 20' Containers said to contain**
             **307.03 tons Copper Wire Scrap.**
             **D.O.L.: 11/4/13**
             **NHM Ref. 13/1778**
             **AGCS Claim No. OC91257501**

Dear Mr. Fitzpatrick:

      Thank you for your email of June 4, 2014. The reason that we said that the Difference in Conditions/Increased Value coverage provided by Clause 53 of the policy would not affect our coverage analysis is that it only provides increased value and additional perils. Just like the Contingent Coverage for Assured as Consignee found at Clause 52, Clause 53 has no effect upon the duration of coverage . . . nor does it supersede the Paramount Warranties of the policy.

      Per our letter of May 14, 2014, because this was a CIF purchase where the Seller /Supplier was to provide the insurance, the AGCS policy did not attach to the shipment, based upon the limitations imposed by Clause 6. In this case, the underlying CIF contracts provided that title and risk of loss did not pass from the supplier Riverbend until the cargo had passed the ships' rail. And, all seem to agree at this point that the 307.5 MT of Copper Scrap noted on the bill of lading did not actually exist at that time due to the fraud of the shipper, Riverbend. Therefore, MCC's financial loss by virtue of having advanced money against the on board bill of lading would not be covered under the policy's all risk of physical loss or damage wording. This result is not changed in any way by virtue of the existence of the Contingency Insurance provided by Clause 52 or the DIC/Increased Value Coverage provided by Clause 53.

Allianz Global Corporate & Specialty ®
1 Chase Manhattan Plaza
37th Floor
New York, NY 10005
Phone +1.646.472.1480
Fax +1.212.524.6805

With respect to your numbered remarks, we offer the following commentary where warranted:

With respect to item "1", the reason that we clarified the source of our information that Anthony Kim introduced Riverbend to the transaction was that you raised it as an issue. It is consistent with the apparent joint nature of the venture among MCC, McQan and Riverbend as evidenced in the underlying documents and most recently, by McQan's June 6, 2014 letter to MCC wherein they refer to Riverbend as the Seller and McQan as following MCC's instructions in arranging for the purchase. This leads to the inescapable conclusion that the purchase and sale transaction underlying the insured voyage originated with Riverbend as the Shipper/Seller, with its contract being specifically referenced on the bill of lading approved in advance of shipment by MCC.

With respect to item "3", we are asking MCC to identify the "legally binding contract from the Supplier and Seller", which Paragraph 8 of its contract with McQan entitles MCC to receive. With respect to your question at items "12" and "16", our investigator confirms that he requested from McQan documentation and information concerning the truckers and that none was provided.

As previously stated, AGCS is willing to consider reimbursing the container demurrage expense on a without prejudice basis and continues to reserve all of its rights and defenses under the policy, at law or otherwise. If you would like to discuss this further, please let us know.

Sincerely,

Thomas Curran
Ocean Cargo Claims Manager

Allianz Global Corporate & Specialty ®
1 Chase Manhattan Plaza
37th Floor
New York, NY 10005
Phone +1.646.472.1480
Fax +1.212.524.6805